UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

08-20439 CR-ALTONAGA
Case No. _____

MAGISTRATE JUDGE
BROWN

18 U.S.C. § 371
18 U.S.C. § 1349
18 U.S.C. § 287
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 2
18 U.S.C. § 1001(a)(2)
18 U.S.C. § 982

UNITED STATES OF AMERICA,

vs.

RONALD HARRIS
and
ENRIQUE GONZALEZ,

Defendants.
_____/

FILED by _____ D.C.

MAY 2 2 2008

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment:

1.      The Medicare Program was a federal health care program providing benefits to persons who were over the age of 65 or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.     "Part B" of the Medicare program paid Medicare providers and suppliers for covered goods and services, including medically necessary Human Immunodeficiency Virus ("HIV") infusion therapy, that were ordered by physicians, and provided by clinics and other qualified health care providers. Medicare Part B was administered in Florida by First Coast Service Options, a company that contracted with CMS to receive, adjudicate, process and pay certain Part B claims.

4.     Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to the beneficiary. This occurred when the provider accepted assignment of the right to payment from the beneficiary. In that case, the provider submitted the claim to Medicare for payment, either directly or through a billing company.

5.     Physicians, clinics and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider who was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that had been performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who had ordered the services.

6.     Physicians Med-Care, Inc. ("Physicians Med-Care") was a Florida corporation, purportedly doing business at 8150 S.W. 8th Street, #113, Miami, Florida. Physicians Med-Care was a medical clinic that purported to specialize in treating patients with HIV by providing infusion

therapy. From in or around August 2002 through in or around February 2004, approximately $24.5 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at Physicians Med-Care.

7.      Physicians Health Med-Care, Inc. ("Physicians Health") was a Florida corporation purportedly doing business at 140-142 N.E. 1st Avenue, Hallandale, Florida. Physicians Health was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around January 2003 through in or around March 2004, approximately $1.7 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at Physicians Health.

8.      Defendant **RONALD HARRIS**, a resident of Miami-Dade County, Florida, was a medical doctor who purported to order and provide HIV infusion services to Medicare beneficiaries at Physicians Med-Care and Physicians Health. **RONALD HARRIS** was also the president and registered agent of Physicians Med-Care, and the president and registered agent of Physicians Health.

9.      Defendant **ENRIQUE GONZALEZ**, a resident of Miami-Dade County, Florida, was director of Physicians Med-Care.

10.      From in or around August 2002 through in or around February 2004, Physicians Med-Care submitted claims to Medicare under the provider number of **RONALD HARRIS**, which was 95365.

11.      From in or around January 2003 through in or around March 2004, Physicians Health submitted claims to Medicare under the clinic's group provider number, which was K4776.

-3-

## COUNT 1
### Conspiracy to Defraud the United States,
### to Cause the Submission of False Claims,
### and to Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1.     Paragraphs 1 through 11 of the General Allegations section of this Indictment are realleged and incorporated by references as if fully set forth herein.

2.     From in or around August 2002, through in or around March 2004, the exact dates being unknown to the Grand Jury, at Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

### RONALD HARRIS
### and
### ENRIQUE GONZALEZ,

and others known and unknown to the Grand Jury, did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a.     to defraud the United States by impairing, impeding, obstructing and defeating, through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program;

b.     to make and present claims upon and against the United States Department of Health and Human Services, a department and agency of the United States, for purportedly medically necessary HIV infusion therapy medications, knowing such claims to be false, fictitious, and fraudulent, in violation of Title 18, United States Code, Section 287;

-4-

c.      to knowingly and willfully offer and pay any remuneration, including cash kickbacks and bribes, directly and indirectly, overtly and covertly, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, and to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, service, and item for which payment may be made in whole and in part by Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2).

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for **RONALD HARRIS** and **ENRIQUE GONZALEZ,** and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare; (b) offering and paying kickbacks and bribes to Medicare beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare beneficiary numbers by the conspirators as the bases of claims filed for HIV infusion therapy; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds of the fraud, the payment of kickbacks, and the true owners of Physicians Med-Care and Physicians Health; and (d) diverting the proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## MANNER AND MEANS

The manner and means by which **RONALD HARRIS** and **ENRIQUE GONZALEZ** and their co-conspirators, known and unknown to the Grand Jury, sought to accomplish the objects and purpose of the conspiracy included, among other things:

-5-

4.    **RONALD HARRIS** and **ENRIQUE GONZALEZ** would cause the establishment and incorporation of Physicians Med-Care in the State of Florida.

5.    **RONALD HARRIS** would work as the physician at Physicians Med-Care, and be an authorized signer on the Physicians Med-Care account at Intercredit Bank.

6.    **ENRIQUE GONZALEZ** and **RONALD HARRIS** would become corporate officers and directors at Physicians Med-Care.

7.    **RONALD HARRIS** would cause the establishment and incorporation of Physicians Health in the State of Florida.

8.    **ENRIQUE GONZALEZ** would cause money to be provided to Physicians Health for the purpose of financing the company.

9.    **RONALD HARRIS** would work as the physician at Physicians Health, and become an authorized signer on the Physicians Health account at Intercredit Bank.

10.    **RONALD HARRIS, ENRIQUE GONZALEZ,** and their co-conspirators, known and unknown to the Grand Jury, would use a medical biller to submit claims to Medicare on behalf of Physicians Med-Care and Physicians Health.

11.    **ENRIQUE GONZALEZ** would provide cash to his co-conspirators for the purpose of paying cash kickbacks to Medicare beneficiaries in exchange for the patients signing documents at Physicians Med-Care stating that they had received the treatments that were billed to Medicare, when the treatments were not provided and were not medically necessary.

12.    **RONALD HARRIS** and his co-conspirators, known and unknown to the Grand Jury, would order unnecessary tests, sign medical forms, and authorize treatments to make it appear that legitimate medical services were being provided to Medicare beneficiaries.

-6-

13.     **RONALD HARRIS** and his co-conspirators,  known and unknown to the Grand Jury, would cause the submission of approximately $26.2 million in false and fraudulent claims to Medicare under the provider numbers of **HARRIS** and Physicians Health, seeking reimbursement for the costs of infusions, injections and other treatments that were not provided and were not medically necessary.

14.     After payments from Medicare were transferred into the Physicians Med-Care and Physicians Health bank accounts, **RONALD HARRIS, ENRIQUE GONZALEZ**, and their co-conspirators, known and unknown to the Grand Jury, would transfer approximately $3.4 million to sham management, marketing, and investment companies owned and operated by their co-conspirators.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects and purpose, at least one of the conspirators committed and caused to be committed, at Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the following overt acts, among others:

1.     On or about December 2, 2002, **ENRIQUE GONZALEZ** became the director of Physicians Med-Care.

2.     On or about January 22, 2003, **RONALD HARRIS** signed an agreement with R&I Billing Corp. to provide Medicare billing for HIV infusion treatment services allegedly provided at Physicians Med-Care.

3.     On or about February 17, 2003, **RONALD HARRIS** caused to be filed Articles of Incorporation in the State of Florida for Physicians Health, listing himself as the director and registered agent.

4.      On or about May 30, 2003, **RONALD HARRIS** caused a claim to be submitted to the Medicare program for 300 international units ("IUs") of Rho (D) immune globulin allegedly provided to Medicare beneficiary E.G. at Physicians Med-Care.

5.      On or about June 18, 2003, **RONALD HARRIS** caused a claim to be submitted to the Medicare program for 300 IUs of Rho (D) immune globulin allegedly provided to Medicare beneficiary N.J. at Physicians Med-Care.

6.      On or about July 11, 2003, **RONALD HARRIS** caused a claim to be submitted to the Medicare program for 300 IUs of Rho (D) immune globulin allegedly provided to Medicare beneficiary S.K. at Physicians Med-Care.

7.      On or about July 24, 2003, **ENRIQUE GONZALEZ** tendered a check drawn on the Physicians Med-Care bank account to Physicians Health, in the approximate amount of $50,000, for the purpose of financing the clinic.

8.      On or about August 21, 2003, **ENRIQUE GONZALEZ** tendered a check drawn on the Physicians Med-Care bank account to Caribbean Investments, in the approximate amount of $400,000, for sham investment services.

9.      On or about August 21, 2003, **ENRIQUE GONZALEZ** tendered a check drawn on the Physicians Med-Care bank account to Allstar Medical, in the approximate amount of $300,000, for sham management services.

10.     On or about October 22, 2003, **RONALD HARRIS** tendered a check drawn on his personal bank account to Allstar Medical, in the approximate amount of $200,000, for sham management services.

11.    On or about November 4, 2003, **RONALD HARRIS** tendered a check drawn on his personal bank account to Allstar Medical, in the approximate amount of $153,000, for sham management services.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1.    Paragraphs 1 through 11 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    From in or around August 2002, through in or around March 2004, the exact dates being unknown to the Grand Jury, at Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**RONALD HARRIS**
**and**
**ENRIQUE GONZALEZ,**

did knowingly and willfully combine, conspire, confederate and agree with each other and others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment of health care benefits, items, and services.

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for **RONALD HARRIS, ENRIQUE GONZALEZ**, and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare; (b) offering and paying cash kickbacks and bribes to Medicare beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare beneficiary numbers by the conspirators as the bases of claims filed for HIV infusion therapy; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, the payment of kickbacks, and the true owners of Physicians Med-Care and Physicians Health; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## MANNER AND MEANS

4.      The allegations in paragraphs 4 through 14 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated as though fully set forth herein as a description of the Manner and Means of this conspiracy.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 3 - 5
### Submission of False Claims
### (18 U.S.C. §§ 287 and 2)

1.      Paragraphs 1 through 11 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, at Miami-Dade County, in the Southern District of Florida, the defendant,

### RONALD HARRIS,

and others did make and present to a person or officer in the civil, military, and naval service of the

United States, and to a department and agency thereof, the following claims upon and against the

United States Department of Health and Human Services, a department and agency of the United

States, knowing such claims to be false, fictitious and fraudulent:

| COUNT | Clinic | Medicare Beneficiary | On or about Claim Date | Description of Outpatient Service | Approximate Amount Paid by Medicare |
|-------|--------|----------------------|------------------------|-----------------------------------|-------------------------------------|
| 3 | Physicians Med-Care | E.G. | 5/30/2003 | 300 IUs of Rho (D) immune globulin | $4,929.60 |
| 4 | Physicians Med-Care | N.J. | 6/18/2003 | 300 IUs of Rho (D) immune globulin | $4,929.60 |
| 5 | Physicians Med-Care | S.K. | 7/11/2003 | 300 IUs of Rho (D) immune globulin | $4,929.60 |

In violation of Title 18, United States Code, Sections 287 and 2.

## COUNT 6
### Money Laundering Conspiracy
### (18 U.S.C. § 1956(h))

From in or around August 2002, through in or around March 2004, the exact dates being

unknown to the Grand Jury, at Miami-Dade and Broward Counties, in the Southern District of

Florida, and elsewhere, the defendants,

**RONALD HARRIS**
**and**
**ENRIQUE GONZALEZ,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine,

conspire, and agree with each other and with others, known and unknown to the Grand Jury, to

-11-

commit offenses against the United States, that is, to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 7-11**
**Money Laundering**
**(18 U.S.C. §§ 1957 and 2)**

On or about the dates specified as to each count below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**RONALD HARRIS**
**and**
**ENRIQUE GONZALEZ,**

knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity:

| Count | Defendant | On or about Date | Monetary Transaction |
|-------|-----------|------------------|----------------------|
| 7 | **RONALD HARRIS** | 10/22/2003 | Check in the approximate amount of $200,000, drawn on **RONALD HARRIS'** account at Intercredit Bank, made payable to "Allstar Medical," deposited into the Allstar Medical bank account at Intercredit Bank. |
| 8 | **RONALD HARRIS** | 11/4/2003 | Check in the approximate amount of $153,000, drawn on **RONALD HARRIS'** account at Intercredit Bank, made payable to "Allstar Medical," deposited into the Allstar Medical account at Intercredit Bank. |

| Count | Defendant | On or about Date | Monetary Transaction |
|-------|-----------|------------------|----------------------|
| 9 | **ENRIQUE GONZALEZ** | 8/21/2003 | Check in the approximate amount of $400,000, drawn on Physicians Med-Care's account at Intercredit Bank, made payable to "Caribbean Investments," deposited into the Caribbean Investments account at Intercredit Bank. |
| 10 | **ENRIQUE GONZALEZ** | 8/21/2003 | Check in the approximate amount of $300,000, drawn on Physicians Med-Care's account at Intercredit Bank, made payable to "Allstar Medical," deposited into the Allstar Medical account at Intercredit Bank. |
| 11 | **ENRIQUE GONZALEZ** | 7/24/2003 | Check in the approximate amount of $50,000, drawn on Physicians Med-Care's account at Intercredit bank, made payable to "Physicians Health Med-Care," deposited into the Physicians Health account at Intercredit Bank. |

In violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT 12
### False Statements
### (18 U.S.C. § 1001(a)(2))

1.      On or about February 25, 2008, **ENRIQUE GONZALEZ** was interviewed by agents from the Federal Bureau of Investigation in Miami, Florida, in the Southern District of Florida.  At aforesaid time and place, the interviewing agents were conducting an investigation to determine whether, among others, violations of Title 18, United States Code, Sections 287 and 1347, and Title 42, United States Code, Section 1320a-7b had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations.  It was material to the aforesaid investigation to ascertain whether **ENRIQUE GONZALEZ** knew that patients at Physicians Med-Care were receiving kickbacks, or participated in the payment of such kickbacks, in return for coming to Physicians Med-Care for treatment.

2.    During the aforesaid interview, at Miami-Dade County, in the Southern District of Florida, the defendant,

**ENRIQUE GONZALEZ,**

in a matter within the jurisdiction of the United States Department of Justice, Federal Bureau of Investigation, did knowingly and willfully make a false, fraudulent, and fictitious material statement and representation, that is, that he never gave money to anyone for the purpose of paying kickbacks to Medicare beneficiaries.

3.    The aforementioned statement by **ENRIQUE GONZALEZ**, as he then and there well knew and believed, was a false material statement, in that **ENRIQUE GONZALEZ** knew that he had, in fact, given money to another person for the purpose of paying kickbacks to Medicare beneficiaries and, in fact, that he gave money to another person for the purpose of that person paying cash kickbacks to Medicare beneficiaries at Physicians Med-Care in return for their agreement to sign infusion therapy sheets at Physicians Med-Care.

In violation of Title 18, United States Code, Section 1001(a)(2).

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1.    The allegations contained in Counts 1 through 11 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which **RONALD HARRIS** and **ENRIQUE GONZALEZ** have an interest, pursuant to the provisions of Title 18, United States Code, Section 982.

-14-

2.      Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of **RONALD HARRIS** and **ENRIQUE GONZALEZ**, for any of the health care fraud offenses charged in this Indictment, Counts 1-5, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses or any property, real or personal, which was involved in the offenses, or any property traceable to such property, which represents a sum equal to the amount of the gross proceeds traceable to the health care fraud offenses.

3.      Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of **RONALD HARRIS** and **ENRIQUE GONZALEZ** for any of the money laundering offenses charged in this Indictment, Counts 6-11, the defendants shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

4.      If more than one defendant is convicted for an offense, the defendants so convicted are jointly and severally liable for the amount derived from such offense.

5.      If any of the property described above, as a result of any act or omission of the defendants:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third person;

        c.      has been placed beyond the jurisdiction of the Court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be subdivided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 928(b)(1).

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(7).

A TRUE BILL

FOREPERSON

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

for kirk Ogrosky

KIRK OGROSKY
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U. S. DEPARTMENT OF JUSTICE

N. NATHAN DIMOCK
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. _____ |
| vs. | |
| | **CERTIFICATE OF TRIAL ATTORNEY*** |
| RONALD HARRIS, et al., | |
|          Defendants. | |
| _____/ | **Superseding Case Information:** |

**Court Division:** (Select One)

| | New Defendant(s) | Yes _____ No _____ |
|---|---|---|
| __X__ Miami _____ Key West | Number of New Defendants | _____ |
| _____ FTL _____ WPB _____ FTP | Total number of counts | _____ |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No)     __Yes__
   List language and/or dialect     __Spanish__

4. This case will take   __10__   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                                   (Check only one)

   | | | | | | |
   |---|---|---|---|---|---|
   | I | 0 to 5 days | _____ | Petty | _____ |
   | II | 6 to 10 days | __X__ | Minor | _____ |
   | III | 11 to 20 days | _____ | Misdem. | _____ |
   | IV | 21 to 60 days | _____ | Felony | __X__ |
   | V | 61 days and over | _____ | | |

6. Has this case been previously filed in this District Court? (Yes or No)     __No__

   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?     (Yes or No)     __No__
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____   District of _____

   Is this a potential death penalty case? (Yes or No)     __No__

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   _____ Yes   __X__ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   _____ Yes   __X__ No

          _____
          HANK BOND WALTHER, TRIAL ATTORNEY, DOJ
          Court No. A5501101
          N. NATHAN DIMOCK, TRIAL ATTORNEY, DOJ

*Penalty Sheet(s) attached

REV 4/8/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   ENRIQUE GONZALEZ

**Case No:**

**Count #:  1**

Conspiracy to Defraud the United States, to Cause the Submission
of False Claims, and to Pay Health Care Kickbacks

18 U.S.C. § 371

**\* Max.Penalty**:   5 years' imprisonment

**Count #:  2**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\*Max. Penalty:**   10 years' imprisonment

**Count #:  6**

Money Laundering Conspiracy

18 U.S.C. § 1956(h)

**\*Max. Penalty:**   20 years' imprisonment

**Counts #:  9-11**

Money Laundering

18 U.S.C. §§ 1957 and 2

**\*Max. Penalty:**   10 years' imprisonment as to each count

**Count #:  12**

False Statement

18 U.S.C. § 1001(a)(2)

**\*Max. Penalty:**   5 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:   RONALD HARRIS

Case No:

Count #:  1

Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Pay Health Care Kickbacks

18 U.S.C. § 371

* Max.Penalty:   5 years' imprisonment

Count #:  2

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

*Max. Penalty:   10 years' imprisonment

Counts #:  3-5

Submission of False Claims

18 U.S.C. §§ 287 and 2

*Max. Penalty:   5 years' imprisonment as to each count

Count #:  6

Money Laundering Conspiracy

18 U.S.C. § 1956(h)

*Max. Penalty:   20 years' imprisonment

Counts #:  7-8

Money Laundering

18 U.S.C. §§ 1957 and 2

*Max. Penalty:   10 years' imprisonment as to each count

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.